IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

RHONDA VALDIVIA, DAVID W.          )
NELSON, and TWILA G. NELSON,       )
                                   )
              Plaintiffs,           )
                                   )
v.                                 )          No. CIV-05-788-L
                                   )
UNITED STATES OF AMERICA,          )
ex rel. ATTORNEY GENERAL OF        )
THE UNITED STATES and STATE        )
OF OKLAHOMA, ex rel.               )
OKLAHOMA DEPARTMENT OF             )
PUBLIC SAFETY,                     )
                                   )
              Defendants.           )

# O R D E R

This matter arises out of the seizure of nearly $900,000 in currency on April

30, 2005 by Oklahoma Highway Patrol Trooper Garrett Vowell.  On July 12, 2005,

plaintiff Rhonda Valdivia filed a complaint seeking immediate return of the seized

currency.  Thereafter, Valdivia, together with additional plaintiffs David W. and Twila

G. Nelson, filed an amended complaint.[1]  The amended complaint sought return of

the currency based on defendants' alleged failure to comply with the Civil Asset

Forfeiture Reform Act of 2000 ("CAFRA").  Amended Complaint at ¶¶ 34-42.  In

addition, plaintiffs requested return of the funds as equitable relief for defendants'

alleged violation of plaintiffs' procedural due process rights.  Id. at ¶¶ 32-33.  Finally,

---

[1]In light of the filing of the amended complaint, the court issued an Order on September 29,
2005 finding defendants' motions to dismiss the original complaint moot.

plaintiffs asserted an alternative claim to return of the monies pursuant to the hardship provisions of CAFRA.  Id. at ¶¶ 43-45.

This matter is before the court on plaintiffs' Motion for Order Returning Property Seized from Plaintiffs and Motion for Temporary Restraining Order and Further Equitable Relief.  In response to plaintiffs' amended complaint and motion, the United States moves to dismiss the amended complaint, deny the hardship petition, and deny plaintiffs' motion for immediate return of the currency.  The State of Oklahoma seeks dismissal of the amended complaint because it no longer has possession or control over the seized currency.

Both defendants move to dismiss the amended complaint for lack of subject matter jurisdiction and for failure to state a claim.  The standards governing motions to dismiss are clear.  A complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Conley v. Gibson, 355 U.S. 41, 45-46 (1957) (footnote omitted); Meade v. Grubbs, 841 F.2d 1512, 1526 (10th Cir. 1988).  The complaint must be construed in the light most favorable to the plaintiff and all factual allegations in the complaint must be presumed to be true.  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Meade, 841 F.2d at 1526.  However, "in analyzing the sufficiency of the plaintiff's complaint, the court need accept as true only the plaintiff's well-pleaded factual contentions, not his conclusory allegations."  Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).  This is because "conclusory

2

allegations without supporting factual averments are insufficient to state a claim on which relief can be based." Id.  In contrast, the court need not accept the factual allegations of the complaint as true when ruling on a 12(b)(1) motion if the motion attacks the factual basis of the court's jurisdiction.  In that instance,

> the court must look beyond the complaint and has wide discretion to allow documentary and even testimonial evidence under Rule 12(b)(1).  However, "a court is required to convert a Rule 12(b)(1) motion to dismiss into a Rule 12(b)(6) motion or a Rule 56 summary judgment motion when resolution of the jurisdictional question is intertwined with the merits of the case."  "[T]he underlying issue [in determining whether the jurisdictional question is intertwined with the merits] is whether resolution of the jurisdictional question requires resolution of an aspect of the substantive claim."

Paper, Allied-Industrial, Chemical and Energy Workers Int'l Union v. Continental Carbon Co., 428 F.3d 1285, 1292 (10th Cir. 2005) (citations omitted).

Based on the evidentiary materials supplied by the parties,[2] the basic facts with respect to the seizure of the funds appear to be undisputed, although the parties dispute the source of the funds.  The court need not resolve this dispute, however, because even accepting plaintiffs' version as true, the court lacks subject matter jurisdiction over this action.  According to plaintiffs, the majority of the funds at issue are the proceeds of the sale of four quarter horses owned by Valdivia.  The sale closed at Remington Park in Oklahoma City on April 30, 2005 when the foreign buyers of the horses delivered $900,000 in cash to Valdivia's husband, Sammy

---

[2]Both plaintiffs and the United States submitted evidentiary materials, including affidavits.

Valdivia.  Affidavit of Samuel Valdivia at ¶¶ 1-3.  Sammy Valdivia claims he had arranged for David Nelson to transport the money to Valdivia's father, Paul Philpot, in Sallisaw, Oklahoma.  Id.  Notwithstanding the fact that Sallisaw, Oklahoma is east of Oklahoma City off Interstate 40, the Nelsons were stopped by Trooper Vowell on southbound Interstate 35 at mile marker 87.  Exhibit 5 to Brief in Support of Motion for Order Directing Return of Property Seized from Plaintiffs and for Temporary Restraining Order and Other Equitable Relief at 1 [hereinafter cited as "Plaintiffs' Brief"].  Vowell's report reflects he stopped the vehicle David Nelson was driving because it was speeding and traveling too close.  Exhibit 5 to Plaintiffs' Brief at 3. While waiting on a records check, Vowell used his canine partner Hilto to perform a canine sniff of the vehicle.  Id. at 4.  After Hilto alerted to the rear of the car three times, Vowell opened the trunk and Hilto alerted to a black suitcase.  Id. at 4-5. When Vowell opened the suitcase, he discovered it was full of currency in plastic bags.  Id. at 5.  Thereafter, the suitcase was seized and David and Twila Nelson were arrested on charges of transporting or possessing illegal drug currency.  Id. at 1, 5.  In addition to the currency in the suitcase, the officers also seized $900 to $1,100 that David Nelson had on his person.  Id. at 5; Affidavit of David W. Nelson at ¶ 5.  After the Nelsons were arrested, they disclaimed any interest in the money contained in the suitcase.  Affidavit of David W. Nelson at ¶ 6; Affidavit of Kevin A. Pino at ¶ 7.  At some point after April 30, 2005, both the money from the suitcase

and the money seized from David Nelson were transferred from control of the Oklahoma Highway Patrol to the United States Drug Enforcement Agency ("DEA").

As the funds were initially seized by a state agency, to proceed with non-judicial forfeiture proceedings, the United States was required to send notice of the seizure to interested parties within 90 days of the date of the seizure.  18 U.S.C. § 983(a)(1)(A)(iv).  The 90-day period expired on July 29, 2005.  Prior to that date, however, Valdivia filed a formal notice of claim with the DEA.  The notice, which was dated June 3, 2005, was received by the DEA on June 20, 2005.  Valdivia's claim filing meant the funds could no longer be subject to administrative forfeiture.  *See* Floyd v. United States, 860 F.2d 999, 1004 (10th Cir. 1988) (filing of a claim halts the administrative forfeiture process).  The claim triggered CAFRA's requirement that the matter proceed through a civil forfeiture complaint, which had to be filed no later than 90 days after the claim was filed.  18 U.S.C. § 983(a)(3)(A).  The court takes judicial notice that the government filed a complaint for civil forfeiture on August 31, 2005, which is within the 90-day time period.[3]  *See* United States v. $892,488.00 in United States Currency, Case No. CIV-05-1007-L (W.D. Okla. filed Aug. 31, 2005) [hereinafter cited as *Currency*].

---

[3]A copy of the claim, which is attached as Exhibit 7 to Plaintiffs' Brief, reflects a preparation date of June 3, 2005.  The Verified Complaint of Forfeiture in *Currency* alleges Valdivia's claim was received by the DEA on June 20, 2005.  *Currency* Complaint at ¶ 7.  Even if the court were to assume June 3, 2005 constitutes the date the claim was filed, the *Currency* complaint was timely filed as the 90-day period would not have expired until September 1, 2005.

The filing of the *Currency* complaint is fatal to plaintiffs' continued prosecution of their first three claims against the United States.  Plaintiffs' first claim asserts a constitutional due process violation, arguing that defendants failed to provide plaintiffs with notice and an opportunity to be heard.  This claim is intertwined with plaintiffs' second claim because plaintiffs assert "what is constitutionally reasonable in these circumstances should be guided by the procedural requirements of CAFRA."  Plaintiffs' Response to United States Motion to Dismiss at 10.  In the second claim, plaintiffs allege that defendants did not comply with CAFRA because they did not provide timely notice in the non-judicial forfeiture proceeding.[4]  Given Valdivia's June 3, 2005 claim, however, the government was not permitted to proceed through non-judicial forfeiture.  That process was halted by Valdivia's claim filing; thus, no notice with respect to administrative forfeiture was required as the government could no longer proceed down that path.  Rather, the government was forced to proceed through judicial forfeiture, which it has done.  The judicial forfeiture proceeding provides an adequate remedy at law and all the process plaintiffs are due.[5]  *See* United States v. Akers, 215 F.3d 1089, 1106 (10th Cir.), *cert. denied*, 531 U.S. 1023 (2000).  The civil forfeiture action provides plaintiffs their exclusive remedy with respect to the funds at issue.

---

[4]The Amended Complaint also alleged a violation of CAFRA because the government had not instituted judicial forfeiture proceedings.  As previously noted, this argument is moot given the filing of the *Currency* complaint on August 31, 2005.

[5]Plaintiffs have filed answers and verified statements of interest or right in the *Currency* case.

Plaintiffs' third claim fails to state a claim.  In this claim, plaintiffs allege the United States could not proceed with administrative forfeiture because the value of the property seized exceeds $500,000.  Plaintiffs' assertion of a $500,000 limitation, however, is based on a misreading of 19 U.S.C. § 1607.  The $500,000 limitation in that section applies only to seized vessels, vehicles, aircraft, merchandise, or baggage, not to currency.  *Compare* 19 U.S.C. § 1607(a)(1) *with* 19 U.S.C. § 1607(a)(4).  Moreover, given the filing of Valdivia's claim and the subsequent filing of the *Currency* complaint, the government was prohibited from proceeding through the non-judicial forfeiture process.

Notwithstanding dismissal of the claims against the United States, plaintiffs argue this action should continue against the State of Oklahoma because there is a factual dispute regarding whether the State retained some of the funds seized.[6] They contend that "[s]ince plaintiffs (sic) claims against defendant State of Oklahoma ex rel Department of Public Safety is (sic) seeking return of monies seized, and not damages, plaintiffs' complaint against this state agency does not run afoul of the 11th Amendment."  Plaintiffs' Brief at 8 n.2.  Plaintiffs, however, are incorrect.[7]

> "The Eleventh Amendment is an explicit limitation of the judicial power of the United States."  *Missouri v. Fiske*, 290

---

[6]Plaintiffs contend Trooper Vowell seized $901,100 on April 30, 2005, not the $892,488 ultimately transferred to the DEA and at issue in *Currency*.

[7]Although the State did not raise this issue in its motion to dismiss, "[a] federal court must examine each claim in a case to see if the court's jurisdiction over that claim is barred by the Eleventh Amendment." Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 121 (1984). *See also* Nelson v. Geringer, 295 F.3d 1082, 1098 (10th Cir. 2002).

U.S., at 25.  It deprives a federal court of power to decide
certain claims against States that otherwise would be
within the scope of Art. III's grant of jurisdiction. . . .  [I]f a
§ 1983 action alleging a constitutional claim is brought
directly against a State, the Eleventh Amendment bars a
federal court from granting any relief on that claim.  *See
Alabama v. Pugh*, 438 U.S. 781, 98 S. Ct. 3057, 57 L.
Ed.2d 1114 (1978) (*per curiam*).  The Amendment thus is
a specific constitutional bar against hearing even federal
claims that otherwise would be within the jurisdiction of the
federal courts. . . .   The history of the adoption and
development of the Amendment . . . confirms that it is an
independent limitation on all exercises of Art. III power:
"the entire judicial power granted by the Constitution does
not embrace authority to entertain suit brought by private
parties against a State without consent given," *Ex parte
State of New York No. 1*, 256 U.S. 490, 497, 41 S. Ct.
588, 589, 65 L. Ed. 1057 (1921).

Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 119-20 (1984) (footnote

omitted).  As plaintiffs have sued the State of Oklahoma, there is no doubt that the

Eleventh Amendment applies.  Plaintiffs' action is not saved by the fact that they

seek only injunctive relief; the Eleventh Amendment expressly applies to suits

seeking injunctive and declaratory relief.  *See* Cory v. White, 457 U.S. 85, 90-91

(1982).  Nor can plaintiffs' case against the State be maintained pursuant to the

exception recognized in Ex Parte Young, 209 U.S. 123 (1908), as that exception

"has no application in suits against the States and their agencies, which are barred

regardless of the relief sought."  Puerto Rico Aqueduct v. Metcalf & Eddy, Inc., 506

U.S. 139, 146 (1993).  In addition, the record reveals no voluntary action by the

State that would constitute waiver of its Eleventh Amendment immunity.  *See*

Lapides v. Board of Regents of University System of Georgia, 122 S. Ct. 1640, 1643-45 (2002).

Finally, the court finds that plaintiffs' fourth claim should be construed as a hardship petition pursuant to 18 U.S.C. § 983(f).  Section 983(f) provides that a claimant is entitled to immediate release of seized property if:

> (A) the claimant has a possessory interest in the property;
>
> (B) the claimant has sufficient ties to the community to provide assurance that the property will be available at the time of the trial;
>
> (C) the continued possession by the Government pending the final disposition of forfeiture proceedings will cause substantial hardship to the claimant, such as preventing the functioning of a business, preventing an individual from working, or leaving an individual homeless;
>
> (D) the claimant's likely hardship from the continued possession by the Government of the seized property outweighs the risk that the property will be destroyed, damaged, lost, concealed, or transferred if it is returned to the claimant during the pendency of the proceeding; and
>
> (E) none of the conditions set forth in paragraph (8) applies.

18 U.S.C. § 983(f)(1).  Plaintiffs cannot meet the statutory requirements.  Paragraph (8) specifically excludes currency from being released due to hardship *unless* the currency "constitutes the assets of a legitimate business which has been seized." 18 U.S.C. § 983(f)(8).  The clause "which has been seized" modifies "legitimate

business" not currency.  In this case, no business – legitimate or otherwise – has been seized; thus the hardship provision is inapplicable.

In sum, plaintiffs' Motion for Order Returning Property Seized from Plaintiffs and Motion for Temporary Restraining Order and Further Equitable Relief (Doc. No. 18) is DENIED.  The United States' Motion to Dismiss Amended Complaint, Deny Hardship Petition and Deny Motion for Order Returning Property Seized from Plaintiffs and Motion for Temporary Restraining Order and Further Equitable Relief (Doc. No. 22) is GRANTED.  The State of Oklahoma's Motion to Dismiss Amended Petition (Doc. No. 26) is GRANTED.  Claims 1 and 2 and all claims against the State of Oklahoma are DISMISSED for lack of jurisdiction.  Claim 3 is DISMISSED for failure to state a claim.  Claim 4 is construed to be a hardship petition pursuant to 18 U.S.C. § 983(f) and is DENIED.  Judgment will issue accordingly.

It is so ordered this 10th day of March, 2006.

TIM LEONARD
United States District Judge